Mr. Rasmussen, when you're ready. May it please the Court, my name is John Rasmussen. I represent the appellant, Dainey Ray Marks, in the appeal before you today. There's one main question, two subsidiary questions before the Court here. The first is, is hunting an activity of the Hunt Club as defined in the policy and under the plain and ordinary meaning of the word, hunting? There is an endorsement on the policy at Joint Petit's 160 that says its members are insured but only for their liability with respect to your activities, your meeting the Hunt Club. On hunting, it is squarely an activity of a Hunt Club. Virginia uses the plain meaning rule to define activity, and unless words are defined, they're given their plain, ordinary, and usual meaning, or used in their plain, ordinary, and popular sense. The opening brief, pages 11 through 15, points to seven different dictionary definitions that define activity, and in that case, every single one of them, hunting falls within. And it's also the case in Virginia when deciding whether a, what the plain and ordinary meaning of a word is, Virginia courts in construing Virginia law have routinely looked at dictionaries to find what the plain and ordinary meaning is. Nevertheless, the opinion below applied a constricted definition of activity drawn from a case from out of the district. That opinion found activity means suing and being sued, participating in judicial proceedings, acquiring and owning real property, and borrowing money, among other things. That is a far narrower definition of activity than any of the ones pointed to in the seven dictionaries cited in Mr. Mark's briefs. Well, counsel, in fairness, I mean, when you put it that way, it sounds absurd to define activity that way. But what the court is doing, right, is putting the word activities in context with the other words in the same sentence, and saying that when you use it that way, that members will be liable only with respect to their liability for the club's activities. You know, when you put it that way, it starts to sound more like a vicarious liability provision, right, that what this covers is when someone has a cause of action against the club and is seeking to hold the members vicariously liable for some action that the club took as an entity. And so I guess I'm saying I don't understand, for me at least, kind of how you might define activity in a different context doesn't really address that argument. Your Honor, first of all, there's a second prong to the definition that we don't contend applies here. The second prong applies to activities you take on the club's behalf, and that would, in our mind, take care of the vicarious liability aspect of this. No, no, because that's something you do. Like if I belong to a knitting club and I go door-to-door and sell raffle tickets on behalf of the knitting club, and, you know, in the course of doing that, I punch somebody, then I might say I come within that second clause. That was an activity I undertook in my personal capacity but on behalf of the club. But the first clause, at least as I understand these cases you're talking about in the court below, what they're saying is that the first clause is the club does something wrong, and in suing the club, the plaintiff also tries to hold all the members vicariously liable for letting the club do that. Right. Those seem like two very different claims to me. There is a response to that, the two out-of-district cases that the district court relied on below. One was the cash case, and that was also a hunt club policy, and it was someone that sought coverage for hunting anywhere, anytime that they did, whether it was with a club hunt or not. In this case, in that case, the hunt was not a club hunt. He was hunting with another individual who was not a member of the club or a guest of the club, and that distinguishes us from the cash case because here this was clearly a club hunt. This was organized by the club on club land. Is that what the complaint, that those allegations are in the complaint, that this hunt was organized by the club? It says he was participating in a hunt on land leased by the club. Right. It was on club premises, but I didn't read the complaint to allege that this activity was organized by the club. Your Honor, that comes out in the facts and the way that Virginia construes the duty to defend if there is a possibility that the allegations could lead to any judgment that would be covered than a duty to defend exists. And here there's nothing in the complaint that forecloses that this was a club hunt. In fact, the details suggest it was a club hunt because it was on club land with other club members. In fact, in this case, it was with approximately seven other members and two guests. So I would, I would distinguish the cash case there. The Lennox case actually specifically left open the situation as undecided, the situation that is present here. In the Lennox case, which comes from New Jersey, there was a statement that events organized through the club might create potential for coverage under this endorsement. But those were not the facts in this case. It was just two people that were swimming at a lake and one accidentally injured the other. It wasn't like, for example, a club picnic or barbecue or cookout or hunt in this case. But a fair reading of the pleadings don't suggest at all that this was organized by anybody other than just the members decided to go hunting that day. But that is how the club decided to go hunting is they called each other and decided to go hunting. They went to the club property. No, but then you're making the club and members be one in the same. And I think that's what the court was trying to say. There's a corporate, although not incorporated, there's a corporate difference and a member difference. There's nothing in the pleadings that suggests that they were corporately doing anything. They were just members hunting. All right? I mean, that's a fair read of the plaintiff. I would argue the fact that they were conducting the hunt on land that the club regularly used and that was allegedly leased by the club would make it a club event, Your Honor. Okay, just by being leaseholders of the land they were hunting on would make it a club event? I don't think the complaint forecloses that possibility. It doesn't foreclose it, but you can't read into the complaint every far-flung thing. You're right. It's a reasonable inference to be made from the facts that could include or involve a liability that's covered under Virginia law. But now not only are we making an inference, but we're going to then impute other facts not alleged to make it so. Like, for example, this was an organized hunt, which is not pledged. Pledged that the members were hunting that day. I mean, it's a simple case in terms of facts. I thought that was one thing that was undisputed in this case. They were members and they were guests and they were enjoying themselves. They were hunting. And the question is, is there insurance coverage for members when they're hunting? On property with members, yes. That would fall within activity. All right. Would your answer be the same if there was a cocktail party at the club and Mr. Johnson got in a fight with one of the other members of the club? Would that be an activity of the club? I think a fight would be an exception to that because fighting isn't a club activity. I think if he was liable somehow for getting people sick from food he brought to the picnic or cocktail party, that would fall within the coverage provided by the policy. But you concede that getting in a fight was not any activity of the club or for the benefit of the club. It definitely was not for the benefit of the club, and fighting is not a club activity. That would be kind of extraneous to what the club does. But that would be a much tougher case to argue for you to defend and the duty to identify on. Here I think all the activity is tied into hunting, which is what a hunt club does, is hunt. Going back to the plain meaning rule, words are given their plain meaning, and any doubt resolves in favor of coverage under Virginia law. There's a long string of cases. If there's two reasonable ways to read a particular policy term, then the way to read it that provides coverage, the duty to defend and the duty to identify, is a duty to defend and a duty to identify arise. And here in the cases, there's two from the Supreme Court of Virginia, apply a broad duty to defend, any judgment that may be covered. Unless it's clear that there's no judgment that may be covered, you owe a duty to defend. That's the Parker case. The AES case restated the eight corners rule, and FUJIS from this court applied those cases and had a similarly broad duty to defend. The plaintiff alleges he was a member, that the hunting happened on land that was leased, that he was participating in a hunt, and that he was participating in a hunt, and that the injury resulted from the hunt. So we believe that puts it fairly within the eight corners rule, and there's a duty to defend. If the court gets to the duty to identify, there was uncontroverted deposition testimony that hunting was a club's main activity. It's what was done. This was an organized club hunt. This particular hunt was organized. There were approximately seven members and two guests. The guest paid to be on the hunt, and had the hunt ended better than it did, they would have followed the club rules to provide the meetup among the members. There were only 12 members of the club, right? I think there were about 20. Oh, 20? Yeah. It varies. I think the deposition testimony was there were about 20, but there was no real dispute as to that. I just don't remember the exact number. Can I just ask you a question about the litigation in this case? So I understand that Mr. Johnson, who's the person who actually shot Mr. Marks, he's declared bankruptcy, so there's no recovery against him absent insurance coverage. Correct. But there's also a separate action against the club itself. Is that right? That is correct. And what's the status of that litigation? That, the council litigation that is here, I believe that's been stayed pending resolution of the coverage issue. Okay. Is the insurance company paying to defend that action, the action against the club? I do not know the answer to that. I know that Mr. Johnson's homeowner's policy paid to defend him against the action up until bankruptcy. Okay. And now he's not personally liable, so I believe he's appeared without counsel in all the depositions in this matter. Okay. Thank you. Unless your honors have any further questions now. Thank you, counsel. Thank you. Mr. Mumford. May it please the Court, my name is John Mumford. I represent Scottsdale Insurance Company. And just to answer your question, yes, Scottsdale is providing a defense to the Hunt Club in the liability suit. Thank you. No one disputes, Scottsdale doesn't dispute that hunting is an activity. But the endorsement limits the coverage by linking the word activities to two distinct actors. The first prong of the endorsement extends coverage to member liability for the Hunt Club's activities. The second prong extends coverage to members' activities on behalf of the Hunt Club. That is members' liability for member liability, members' liability for members' activities on behalf of the Hunt Club. The endorsement creates a purposed distinction between member coverage for the Hunt Club's activities and member coverage for member activities, like the shooting. And regardless of the set of facts viewed, whether those that are in the underlying complaint, whether those that are developed in the party's briefs below and here, neither of these two prongs apply. The mark suit alleges that Mr. Johnson is liable only because he breached a duty of care that he personally owed and shot toward a public road, not because of any act of the Hunt Club. Mr. Johnson's shooting was a member activity, which implicates the second prong, where members are given coverage for member activity. But as the court below held and has been conceded here, that was not a member activity on behalf of the Hunt Club. So to get where they want in terms of the coverage here, they inject words and concepts that just aren't in the endorsement. The summary of their argument on page three of the opening brief states, the policy endorsement covers members participating in club activities. They argue that on page 12, they argue that the endorsement covers member liability for Johnson's liability to Marks for his conduct during a Hunt Club activity. But the endorsement doesn't say that. The words participating or conduct during of members are not in that first prong of the endorsement. In fact, the endorsement intended, where the endorsement intended coverage for members in that second prong, it said so very clearly. Don't we really have to start with what is covered? What is a covered activity? Do you agree with the district court that you only insure for those activities of the club? In the first prong, yes. Only when you're signing a contract, those things like that, that's it? Well, I guess I can answer it. So just a ball of play policy, you don't have anything that's specific at all to disinsure at all. You just put their name and it looks like a ball of play policy. So it seems to me, when you look at their incorporating documents, they said that one of their corporate purposes was to enjoy hunting, provide for safe and enjoy hunting. And you covered that activity of the club, didn't you? The hunt club, we don't dispute that the hunt club as an entity engages in activity as it relates to hunting. It doesn't matter whether you call it an entity or not. You covered those activities. We had to first establish that. That's broader than what the district court talked about is what activities are. You have to conceive that, don't you? Well, the district court was addressing the activities in front of the district court and saying that a shooting by a member was not an act of the hunt club. But from analysis, you can't start there. You have to start with what are the covered activities of the club. Then you determine whether or not, in fact, a member is liable for an activity of the club. Let's first talk about what activities are covered. And don't you agree that it's broader than what the district court found to be activities? No. But you don't? Well, in terms of for this purpose. It's not about this purpose. We're talking about this policy. You first talk about the pilot. You wrote it. That's how you charge premiums for them. You insured something and you didn't put much limitation at all. You just stuck their name in there. So you have to look at their documents. And don't you agree that part of their corporate purpose is to enjoy hunting? But the word hunt club activities in that first prong means the acts of the hunt club as an entity. And we agree that the hunt club does engage. You're not going to address my question. Well, let me see if I can. We agree that the hunt club as an entity engages in activities relating to hunting. You're right. Which includes hunting. The hunt club does have the stated purpose of facilitating a place for members to hunt together in a safe environment. The hunt club does lease land. The hunt club does own a clubhouse. Right. So every time someone hunts, the members hunt, they are facilitating it. Is that correct? I'm using your own words. If we take what the hunt club does, those activities we just talked about. Right. And we apply it to the words, the members' liability for the hunt club's activities. Mr. Johnson is not being sued in this suit because of the hunt club activity of leasing land. He's not being sued here for the hunt club's activity of facilitating. No, he's being sued because he's fulfilling their enjoyment of hunting. That's their stated purpose of existence. You've got to take your insurers as you find them. This is an insurer that says we live and breathe to hunt. That's our purpose. And the member is fulfilling that, correct? The hunt club doesn't hunt. The hunt club does not hunt. Do you have the language in front of you? Because it doesn't seem like you ever read it. Did you read the incorporated documents that say what their purpose is? Yes, it says they facilitate places for members to hunt together safely. The hunt club can't pull a trigger. The hunt club didn't shoot anyone here. That's why it facilitates it. And he is liable. What is facilitation? To provide a place for you to do something. And to make sure that it can be done. No, facilitate means provide a place where it can be done. Oh, okay, that's the limitation of facilitation, too. So the dance hall dance. The dance hall facilitates a place for people to dance. The dance hall does not dance. Here, the hunt club facilitates a place for people to hunt. It gave them at least land. It went out and secured that land. Not for people to hunt, members. For members, structure, for members to hunt. But the hunt club does not pull a trigger. The hunt club did not shoot Mr. Marks. I don't want to get into it, either, because you're where you are, and that's all you're going to answer, what you've decided what your answer is. So the question is, what did they pay their premiums to be covered for? What? In terms for this? Yeah. Not for this. For anything. What did you actually earn your premiums? If someone was on the hunt club property and slipped and fell, and there is a premises liability suit, then the member and the person who slipped and fell sued the hunt club and all its membership for vicarious liability for this unincorporated association. The hunt club would be covered. The hunt club is covered and is being defended in this very suit by an attorney appointed by Scottsdale because it's being sued for the things it as an entity does. And if Mr. Marks had sued, no, I'm going to get my people wrong. But if the plaintiff had also sued the members of the club in connection with the claim against the club itself, right, that they didn't have the right safety regulations, they didn't mark the property lines, right, if they had also alleged the members are vicariously liable for that club decision, then the insurance company would also be covering the members, right? Yes. And, in fact, that's not even in the record because it never has been approved by the court below. But below there was a minute pleading that has been sought leave to amend, has not been granted because of the state, that does exactly that. Got it. Okay. And, in fact, that would in that situation. So if Mr. Johnson is sued on a theory that he is vicariously liable for the club's missteps that led to this accident, then the insurance company would cover him as well. Exactly. You said exactly, improvingly. Well, who would make that decision? The insurance company. No, no, no, no. Who would make the decision, you said, if they did something, who would act for the club? The members? In terms of? You said they were vicariously liable for something that the club did. Who would do it? Well, what the court said, what the allegation in count two is, is that the club. Now, the amendment, as Judge Harris asked you a question about if the amendment was, and you agreed approvingly that that would be covered, in that scenario who would be the acting party for the Hunt Club in that? Well, it was an out. So it's only an amendment that relates back to count two of the existing complaint. The amendment sought to add the members for vicarious liability. Let me try it in other languages and ask a question, because English is not helping. But I'm asking you, who would be the actor, the actor? The allegation is the Hunt Club was the actor in count two. And how does it act? How does the Hunt Club act? Through whom does it act? Right, it acts through the members, and they had coverage in the second prong, because members are covered in the second prong for their activities on behalf of the Hunt Club, which is the exact dichotomy the endorsement was meant to provide, which is, one, where the Hunt Club acts as an entity and members are sued for vicarious liability. They're given that coverage in prong one. And in prong two, where members are sued for their activities on behalf of the Hunt Club, something they go out and do, then they get coverage. When you unincorporate it, what is the difference between the Hunt Club and the members when you unincorporate it? An unincorporated association in Virginia can sue and be sued. Yeah, but what is the difference in terms of being of actors? There's no difference, really, right? The members become the actions of an unincorporated body. Just like in any corporation. No, that's not true. That's not true. Officers have particular views in a corporation as a person. You know that in the 14th Amendment and for other purposes. But for an unincorporated organization, the members act. Their actions become synonymous, don't they? They had officers. They had officers. They had officers. And the elected officers were the ones who had bylaws. It wasn't just a group. They had those things. And you have to live by what their bylaws said their purpose was. And I'm happy to live with that purpose, the facilitated place for people to hunt. All right. Go ahead. Applying the phrase members' liability for the Hunt Club's activity, Johnson is not being sued in the Marks suit for the Hunt Club's activity of leasing land, of owning a clubhouse, or those things. He's being sued for the personal act of the shot that he took. And Scottsdale and the district court are not alone in their interpretation of how this endorsement applies. And, in fact, it's consistent with the district court decisions in the Lenox and Everett Cass cases that have already been discussed, the two cases nationally, which consider this exact language of the endorsement in the context of membership clubs. Before getting into the facts of the underlying injury in those cases, both courts analyzed what this language means and what it was supposed to cover, before getting to the specific facts of the case. And according to the Lenox court, the first prong covers a situation where a member is held vicariously liable for an action by the club. The intended coverage would be invoked when a member is held vicariously liable for some activity undertaken by the club as a corporate entity. Similarly, the court in Everett Cass held that the club activities are not references to those recreational pursuits indulged in by club members, rather club activities are those actions taken by the club in its capacity as a nonprofit entity. Can I ask you a question about the Lenox case? Is that the beach club case? Yes. So that's the one that sort of leaves open, at least as I read it, this question about if it's not vicariously liable for an action taken by the club as an entity, but it's not quite just kind of a personal frolic. It's someone at the annual beach club picnic. You know, it's an organized club event and something goes wrong there. What's your position on what I think of as that kind of middle ground? I think the court said that it appeared that one of the parties had appeared to concede a third alternative. So they said that one of the parties... I agree. I'm not trying to say they were. I'm just wondering. So if there is this third alternative, where are you on that? They said specifically that club activities in the provision would at most include events organized and run by the club itself, such as the club's annual picnic. But the court said it's all no reason to analyze that. I agree. I know what the court said, and I'm not suggesting that the court answered the question, but I'm asking you how you would answer the question. Sure. And we don't dispute that. If someone slipped and fell at the Hunt Club's premises during a picnic... But what if this had been like the annual Hunt Club breakfast and it's organized by the club and everybody shows up and then events transpire exactly the way they did. Mr. Johnson, by mistake, shoots out into the road. In terms of... But this time it's not just some members in pursuit, general pursuit of the club's mission. It's an organized club event. Does that make any difference to your analysis? It does not. Okay. And the reason it does not is that the members have coverage for their acts on behalf of the Hunt Club. It's given to them specifically. And the coverage is the coverage, the phrase Hunt Club's activities, means the acts of what the Hunt Club does and gets sued for as the entity. Not the list, not the things, the recreational pursuits of the members themselves. But you would say, I assume also, that we don't have to reach that question in this case because this was not an organized Hunt Club activity. Exactly. This is not the case that the Lennox Court kind of theorized. No, but even if it was, it doesn't change the analysis because members are given coverage for their activities on behalf of the Hunt Club. They've conceded. They've argued below that that prong applied. They've conceded here it doesn't. Unless you all have any questions, that's all I have. Thank you, Your Honors. Thank you. May it please the Court, just a few quick. It sounds like your client didn't buy too much of it in terms of insurance. And when you all were leasing property and signing contracts. My client's Mr. Markser. I don't know. I'm sorry. I'm not sure how he was. But you have to stand behind what they bought. Right. He's stuck with what they bought and he obviously didn't have the same amount of, his homeowner's limits were $100,000, which are not nearly enough to pay the special damages in this case. Right. But in fairness, if this amended complaint seeks to hold Mr. Johnson liable vicariously for the club's failures related to this accident, there'll be coverage for that. I believe he conceded.  Mr. Mumford conceded that. So there'll be something. Okay. Pointing again to the Lennox case, which you noted it does leave, but not leave open the idea that you could have a club organized event and there could be coverage for that, but it doesn't decide it because those weren't the facts before the court in that case. Here, all the allegations and certainly all the evidence that was collected, all the deposition testimony, all the documents show that this was an organized club hunt. In fact, they typically went on hunts such as this one for the last two full last two weeks of, of the hunting season every year, because this happened right near the close of deer hunting season. Activity under Virginia law should be given its plain ordinary meaning. There is nothing in the policy to define activity. There's nothing in it that narrows it to actions as an entity. They could have put that in the policy. It's a, it's a, it's an endorsement. They could have written the endorsement more clearly if that's what they intended to cover was only those items that the opinion below listed items as an entity. And that, uh, that violates Virginia's policy interpretation rules because it gives activity and a constrained meeting rather than it's plain ordinary meaning. And moreover, in a sense that it provides members with coverage, but that's, that's a grant of coverage. It makes them an insured, but then excludes all liability for that's not connected to the activities of the hunt club and exclusionary languages written is read particularly against insurance companies and applying the terms. Uh, unless, unless you have any further questions, we ask that the case be remanded and reversed. All right. Thank you. All right. We'll come down to Greek count. That's Hamilton. You want a break? No, I'm fine. Thank you. All right. Uh, we'll come down Greek council and proceed to our next case.
judges: Roger L. Gregory, Pamela A. Harris, Clyde H. Hamilton